UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSHUA JEFFREY PAGE,

        Plaintiff,

v.

CONNIE HORTON, et al.,

        Defendants.
_____/

Case No. 2:22-cv-30

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Doyle, Casey, Horton, Corrigan, Batho, and McLean. Plaintiff's Eighth Amendment claims against Defendants Russell, Stain, Stallman, Lacy, Nader, Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel, and Peters remain in the case. Further, Plaintiff's first-filed motion to amend (ECF No. 8) will be denied, and Plaintiff's second-filed motion to amend (ECF No. 9) will be granted.

**Discussion**

## I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF officials and medical staff: Warden Connie Horton; Deputy Warden J. Corrigan; Assistant Deputy Warden Rob Batho; Grievance Coordinator M. McLean; Manager Richard D. Russell; Health Unit Manager (HUM) Beth Stain; Doctors Unknown Stallman and Unknown Lacy; Registered Nurses Patricia Lamb, Ressie A. Stranaly, Gerald Covert, Anita Doyle, Lori L. Davis, Maria T. Bennett, Mary Hense, Nelson Duncan, Jodi Ankiel, Gabraielle Peters, and Kathy Casey; and "LLP" K. Nader. (ECF No. 7, PageID.35–39; ECF No. 9, PageID.52.)

By order issued on March 10, 2022, the Court directed Plaintiff to "submit an amended complaint by filing his complaint on the requisite form within twenty-eight (28) days." (ECF No. 6, PageID.32.) The Court advised Plaintiff that "[t]he amended complaint [would] take the place of the original complaint, so it must include all of the Defendants that Plaintiff intend[ed] to sue and all of the claims that Plaintiff intend[ed] to raise," and "Plaintiff must allege, in chronological order, what each Defendant did or did not do on each date." (*Id.*) In response, Plaintiff timely filed an amended complaint. (ECF No. 7.) Plaintiff indicated that he was suing Defendants in their official capacity only. (*See id.*, PageID.35–39.)

In Plaintiff's amended complaint, he alleges that he suffers from restless leg syndrome. (*See, e.g., id.*, PageID.40.) Plaintiff contends that starting in August of 2020, he alerted medical staff at URF to the pain in his legs. (*See id.*) Specifically, on August 26, 2020, Plaintiff submitted an "urgent medical kite" indicating that the medication he was taking was not working and that he was unable to sleep. (*Id.*) Plaintiff was advised that "[d]ue to the state of emergency in Michigan

2

[due to COVID-19], Healthcare [was] only seeing urgent and emergent appointments." (*Id.*) Plaintiff was further advised to contact healthcare if his symptoms worsened or if he felt his "situation [had] become urgent/emergent," and to use his hot water bottle and wear his compression socks. (*Id.*) On August 29, 2020, Plaintiff submitted "another urgent medical kite" indicating that he did not have a hot water bottle or compression socks because they were taken from him when he was transferred to URF and that the Tylenol he was given at the Kinross Correctional Facility for the pain in his legs was not working. (*Id.*) In response, Plaintiff was advised that he would be scheduled for an appointment to be measured for compression socks. (*Id.*) Plaintiff states that thereafter he did not have such an appointment. (*Id.*)

Subsequently, on January 9, 2021, Plaintiff wrote "an urgent kite" advising that his restless leg medication was not working and that he continued to be in pain. (*Id.*, PageID.40–41.) Plaintiff again was told that he would not be able to see medical "due to the state of emergency" and that he should continue taking his medication, wear compression socks, and use warm compresses. (*Id.*, PageID.41.) Plaintiff states that he still did not have compression socks or a hot water bottle that he could use. (*Id.*)

Plaintiff has continued to complain of pain and other symptoms related to his restless leg syndrome, and he alleges that he continues to be denied proper treatment for his condition. Plaintiff alleges that Manager Russell, HUM Stain, Doctor Stallman, LLP Nader, and Registered Nurses Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel, and Peters have all either been alerted to his continuing medical issues due to their receipt of his medical kites or grievances, or at in-person appointments, and that despite knowing of his condition, these Defendants denied—and continue to deny—him medical care or provided—and continue to provide—inadequate medical care. Plaintiff states that following medical staff's failure to provide any medical treatment

3

for his restless leg syndrome in the fall of 2020, Plaintiff filed a grievance on January 29, 2021. (*See id.*) Plaintiff alleges that Assistant Deputy Warden Batho and Grievance Coordinator McLean "reviewed [his] grievance form and denied it because it was untimely." (*Id.*) Plaintiff also alleges that "Warden Connie Horton and [Deputy Warden] J. Corrigan oversee all grievances and issues so [he] feel[s] they are to blame as well." (*Id.*, PageID.47.)

Based on the foregoing allegations, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment to the U.S. Constitution. As relief, Plaintiff seeks monetary damages, as well as the following injunctive relief. (*Id.*, PageID.48.)

Subsequently, Plaintiff filed two motions to amend. (ECF Nos. 8, 9.) In Plaintiff's first-filed motion to amend, he states that he "would like to file a motion to amend," and he requests that the Court appoint him a lawyer. (ECF No. 8, PageID.50.) In Plaintiff's second-filed motion to amend, he states that he "would like to add Mr. Lacy the pain management doctor" as a Defendant, explaining that "[h]e was responsible for not giving [Plaintiff] any type of treatment." (ECF No. 9, PageID.52.) Plaintiff also states that he "would like to sue everyone in [the] suit both officially and personally" and he "would also like to sue for compensatory damages." (*Id.*)

## II.     Plaintiff's Pending Motions

### A.     Plaintiff's First-Filed Motion to Amend

In Plaintiff's first-filed motion to amend, he states that he that he "would like to file a motion to amend," and he requests that the Court appoint him a lawyer. (ECF No. 8, PageID.50.) After Plaintiff filed this motion, he filed a second motion to amend, in which he sets forth his requested amendments in more detail. (*See* ECF No. 9.) Because Plaintiff subsequently filed a motion to amend setting forth his requested amendments in more detail, Plaintiff's request for permission to file such a motion will be denied as moot.

4

With respect to Plaintiff's request for the appointment of counsel, indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel will therefore be denied.

Accordingly, for these reasons, Plaintiff's first-filed motion to amend (ECF No. 8) will be denied.

### B. Second-Filed Motion to Amend

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend his or her pleading once, as a matter of course, in the preliminary stages of a case. Fed. R. Civ. P. 15(a)(1). Additionally, pursuant to Rule 15(a)(2), "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Here, the Court, on its own initiative, previously granted Plaintiff leave to file an amended complaint. (ECF No. 6.) After filing his amended complaint, Plaintiff filed the present motion to amend setting forth several specific amendments he would like to make to his amended complaint.

5

(ECF No. 9.) Specifically, Plaintiff clarifies that he would like to sue Defendants in both their official and individual capacities, and he seeks leave of Court to add another Defendant to this action—Doctor Unknown Lacy—and to amend his requested relief to include compensatory damages. (*Id.*, PageID.52.)

Under these circumstances, the Court will grant Plaintiff's second-filed motion to amend. Further, the Court will construe Plaintiff's motion to be an amendment to his amended complaint. The Clerk shall file Plaintiff's second-filed motion to amend (ECF No. 9) as an amendment on the docket in this action. The operative complaint in this action will be Plaintiff's amended complaint and the amendment docketed pursuant to this opinion and the corresponding order.

### III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Doyle & Casey

Plaintiff lists Registered Nurses Doyle and Casey as Defendants in this action; however, Plaintiff fails to name Defendants Doyle and Casey in the body of his amended complaint or in his subsequent amendment. (*See* ECF No. 7, PageID.36, 39, 40–47; ECF No. 9, PageID.52.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

7

Here, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff fails to state a plausible claim upon which relief may be granted against Defendants Doyle and Casey.

### B. Defendants Horton & Corrigan

With respect to Defendants Horton and Corrigan, Plaintiff states that "Warden Connie Horton and [Deputy Warden] J. Corrigan oversee all grievances and issues so [he] feel[s] they are to blame as well." (Am. Compl., ECF No. 7, PageID.47.)

However, government officials, such as Defendants Horton and Corrigan, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

8

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any *facts* showing that Defendants Horton and Corrigan encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Horton and Corrigan were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Horton and Corrigan engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

C. **Defendants Batho & McLean**

Plaintiff alleges that following medical staff's failure to provide any medical treatment for his restless leg syndrome in the fall of 2020, Plaintiff filed a grievance on January 29, 2021. (Am. Compl., ECF No. 7, PageID.40–41.) Plaintiff states that Assistant Deputy Warden Batho and Grievance Coordinator McLean, both of whom are non-medical personnel at URF, "reviewed [his] grievance form and denied it because it was untimely." (*Id.*, PageID.41.) Plaintiff does not allege that Defendants Batho and McLean had any other involvement in the events underlying his claims.

9

As discussed above, § 1983 liability may not be imposed simply because a supervisory official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300; *see also supra* Part III.B. Moreover, administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (discussing that a custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018).

Plaintiff's allegations of supervisory responsibility as related to the denial of his grievance are insufficient to demonstrate that Defendants Batho and McLean were personally involved in the alleged inadequacy of Plaintiff's medical treatment. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff fails to state a plausible claim upon which relief may be granted against Defendants Batho and McLean.

### D. Defendants Russell, Stain, Stallman, Lacy, Nader, Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel & Peters

Plaintiff alleges that Defendants Russell, Stain, Stallman, Lacy, Nader, Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel, and Peters violated his rights under the Eighth Amendment by failing to provide adequate medical treatment to him.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

11

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

12

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that starting in August of 2020 and continuing to the date he filed this action, he has repeatedly alerted Defendants Russell, Stain, Stallman, Nader, Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel, and Peters to his ongoing pain and other symptoms related to his restless leg syndrome and repeatedly asked for medical care to alleviate these symptoms, but that these Defendants denied his requests for medical care or provided

13

inadequate medical care. Plaintiff further alleges that Defendant Lacy "was responsible for not giving [Plaintiff] any type of treatment." (ECF No. 9, PageID.52.) Although Plaintiff has by no means proven deliberate indifference, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, Plaintiff's Eighth Amendment claims against Defendants Russell, Stain, Stallman, Lacy, Nader, Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel, and Peters may not be dismissed on initial review.

## Conclusion

Plaintiff's first-filed motion to amend (ECF No. 8) will be denied. Plaintiff's second-filed motion to amend (ECF No. 9) will be granted. The Clerk shall file Plaintiff's second-filed motion to amend (ECF No. 9) as an amendment on the docket in this action. The operative complaint in this action will be Plaintiff's amended complaint and the amendment docketed pursuant to this opinion and the corresponding order.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Doyle, Casey, Horton, Corrigan, Batho, and McLean will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Russell, Stain, Stallman, Lacy, Nader, Lamb, Stranaly, Covert, Davis, Bennett, Hense, Duncan, Ankiel, and Peters remain in the case.

An order consistent with this opinion will be entered.


Dated:   June 29, 2022                         /s/ Hala Y. Jarbou
                                               HALA Y. JARBOU
                                               UNITED STATES DISTRICT JUDGE