UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA JEFFREY
PAGE, #866570,

    Plaintiff,

v.

CONNIE HORTON, et al.,

    Defendant.
_____/

Case No. 2:22-cv-30

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses the motion for summary judgment filed by Defendant doctors Robert Lacy and Timothy Stallman. (ECF No. 27.)

Plaintiff — state prisoner Joshua Jeffrey Page— filed suit pursuant to 42 U.S.C. § 1983 on February 8, 2022. In his unverified complaint, Page asserted that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, nineteen prison officials[1] acted with deliberate indifference to his serious

---

[1] Page initially named the following officials as defendants: (1) Warden Connie Horton, (2) Deputy Warden J. Corrigan, (3) Assistant Deputy Warden Rob Batho, (4) Grievance Coordinator M. McLean, (5) Richard D. Russell, (6) Housing Unit Manager (HUM) Beth Stain, (7) Dr. Unknown Stallman, (8) Registered Nurse (RN) Patricia Lamb, (9) RN Ressie A. Stranaly, (10) RN Gerald Covert, (11) RN Anita Doyle, (12) RN Lori L. Davis, (13) RN Maria T. Bennett, (14) RN Mary Hense, (15) RN Nelson

medical needs by denying him medical care for pain associated with restless leg syndrome. (ECF No. 1, PageID.6-8.) On March 10, 2022, this Court ordered Page to file an amended complaint because his February 8, 2022 complaint did not set forth specific factual allegations against Defendants. (ECF No. 6, PageID.31-32.) After Page amended his complaint (ECF No. 7), this Court dismissed Defendants Doyle, Casey, Horton, Corrigan, Batho, and MacLean for Page's failure to state a claim against them in his amended complaint (ECF No. 11, PageID.64-67). At the same time, the Court allowed Page to amend his complaint to sue all remaining Defendants in their personal and official capacities, to request compensatory damages, and to add another Defendant: Dr. Lacy. (*Id.*, PageID.63.)

Defendants Stallman and Lacy now move for summary judgment, asserting that Page did not properly exhaust his administrative remedies before filing suit. (ECF No. 27.) More specifically, Stallman and Lacy argue that Page did not file any grievances claiming that they denied Page adequate medical care. (*Id.*, PageID.131-133.) Page disagrees. (ECF No. 42, PageID.304.) In one of several supplements to his response brief, Page provides portions of additional grievances against Dr. Stallman and Dr. Lacy that had not been appealed through Step III of the grievance process by the time Page filed this lawsuit or amended his complaint to add his claim against Dr. Lacy. (ECF No. 47-1, PageID.345-347.)

---

Duncan, (16) K. Nadar, (17) RN Jodi Ankiel, (18) RN Gabraielle Peters, and (19) RN Kathy Casey.

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment with respect to Dr. Lacy and deny Defendants' motion with respect to Dr. Stallman. The record before the Court shows that Page did not appeal any grievances against Dr. Lacy through Step III of the grievance process before amending his complaint to add his claim against Dr. Lacy. Thus, Defendants have shown that no genuine issue of material fact remains with regard to the claim against Dr. Lacy. However, the record reflects that Page filed a grievance in July of 2021 complaining of the delay in his treatment and naming Dr. Stallman as his medical provider. That grievance was appealed and denied on its merits at all three steps of the grievance process prior to Page filing this action, with the Step II and III Respondents specifically finding that Dr. Stallman was providing Page with adequate medical care. Accordingly, Defendants have not met the Rule 56 standard with respect to Page's claim against Dr. Stallman.

## II.   Factual Allegations

Page says that he sent health care a kite[2] on August 26, 2020. (ECF No. 7, PageID.40.) In that kite, Page informed health care that his medication was not working and that he could not sleep. RN Hense responded, telling Page that, due to the state of emergency in Michigan, health care was only seeing patients with emergent medical conditions. Hense told Page to use his hot water bottle and wear

---

[2]   Kites are the written communications prisoners use to raise their concerns with prison staff, including health care workers.

his compression stockings, and to let health care know if his condition became emergent. (*Id.*)

On August 29, 2020, Page sent health care another kite, this time stating that he did not have a hot water bottle or compression stockings. Page specified that the Tylenol he had been given to treat his leg pain was no longer helping and requested something else to manage his pain. (*Id.*) RN Hense responded the next day, telling Page that health care would schedule an appointment to measure him for compression socks. Hense did not address Page's request for different pain medication. And Page says that he was not given compression socks. (*Id.*)

On January 9, 2021, Page again sent health care a kite stating that his restless leg medication was not working, and he was in pain. (*Id.*, PageID.40-41.) This time, RN Stranaly responded, reiterating that health care could not see Page due to the ongoing state of emergency. (*Id.*, PageID.41.) Stranaly told Page to take his medication and continue to use compression socks and warm compresses.

On January 29, 2021, Page authored grievance URF-21-02-334-25E, complaining that he had repeatedly kited health care about his restless leg syndrome over the last seven months, and had not received any treatment. (*Id.*) Page says that this grievance was rejected as untimely.

On March 12, 2021, Page was seen by RN Duncan. (*Id.*) Duncan allegedly accused Page of being drug seeking and told Page that he would not be seen by a doctor. On the same day, Page wrote grievance URF-21-03-732-12E, complaining

4

about RN Duncan's conduct during their interaction. (*Id.*) Page says the grievance was denied, and he did not appeal it to Step II of the process.

On May 1, 2021, Page says that he sent another kite to health care requesting to be seen by a doctor for his restless leg syndrome. (*Id.*) RN Stranaly responded and told Page that he had an appointment for May 19, 2021. (*Id.*, PageID.41-42.) Page was not seen that day. (*Id.*, PageID.42.) He sent a kite to health care on May 21, 2021 inquiring as to his appointment. Stranaly again responded, stating that Page had an appointment for May 25, 2021. (*Id.*)

On May 25, 2021, Page was seen by Dr. Stallman. On June 11, Page sent health care a kite explaining that the magnesium oxide that Dr. Stallman prescribed Page was causing him major headaches. (*Id.*) Page says that RN Bennett responded, telling Page that he had an appointment with Dr. Stallman in July.

On July 8, 2021, Page again sent a kite to health care complaining about severe pain in his legs. (*Id.*) RN Davis responded, telling Page that he had an appointment scheduled for later in the month. Page says that he authored grievance <u>URF-21-07-1838-12DI</u> on July 19, 2021, complaining that he was not receiving proper treatment for his restless leg syndrome. (*Id.*) Page explained that he had been waiting to see a doctor for a long time, and that he could not endure the pain any longer. Page appealed the grievance through Step III. (*Id.*, PageID.42-44.) It was denied at all steps of the grievance process after the respondents determined that Page was receiving adequate care. (*Id.*)

5

On August 2, 2021, Page says that he sent another kite to health care complaining about the pain in his legs. (*Id.*, PageID.43.) Stranaly responded, telling Page that he was scheduled for an appointment with a medical provider. The next day, Dr. Stallman told Page that Page was going to see pain management the next time they came by URF. (*Id.*)

On September 3, 2021, Page sent another kite to health care regarding his leg pain. (*Id.*) Duncan responded, telling Page that he had an upcoming appointment with his medical provider. (*Id.*, PageID.44.) This pattern then repeated several times over, with Page sending kites to health care about his leg pain on October 5, 2021, November 9, 2021, and February 7, 2022, and RN Bennett and RN Ankiel telling Page he had been scheduled for appointments with his medical provider. (*Id.*, PageID.44-45.)

On February 15, 2022, Page again sent health care a kite regarding his leg pain. (*Id.*, PageID.45.) This time, Page claims that Duncan responded and told Page he must see a nurse before he could see his medical provider. On February 28, 2022, Page sent health care another kite regarding his legs and Peters responded, telling Page to send another kite if he wanted to be evaluated by nursing staff. (*Id.*) On March 2, 2022, Page responded, explaining that the pain in his legs was an ongoing issue and he should not need to be evaluated by nursing. (*Id.*, PageID.45-46.) Nevertheless, Duncan evaluated Page for chronic pain the next day and allegedly told Page that the best Duncan could do was provide Page with Cedaprin (pain reliever) and tell Page to stretch his legs. (*Id.*, PageID.46.) Page told Duncan that neither

6

Cedaprin nor stretching were working, and Duncan told Page that he would not receive further treatment.

On March 8, 2022, Page sent another kite to health care asking to be seen by a doctor. (*Id.*) Page says that he is in the process of appealing yet another grievance against health care staff. (*Id.*) Page says that he never received any treatment from Dr. Lacy, the pain management provider. (ECF No. 7-1, PageID.169.)

### III.   Procedural History

Defendants Stallman and Lacy moved for summary judgment based on Page's failure to exhaust at an early stage of the case. As stated above, Page initiated this action on February 8, 2022. (ECF No. 1.) On March 10, 2022, this Court directed Page to file an amended complaint setting forth specific factual allegations against each Defendant. (ECF No. 6.) Page filed his amended complaint on March 21, 2022 (ECF No. 7), and then moved to amend again on May 25, 2022 (ECF No. 8) and May 31, 2022 (ECF No. 9). After the Court screened Page's amended complaint and granted his May 31, 2022 motion to amend (ECF Nos. 11, 12), this case was stayed for prisoner early medication (ECF No. 13). The Court removed this case from early mediation and lifted the stay on July 21, 2022. (ECF No. 17.) Defendants Stallman and Lacy moved for summary judgment based on Page's failure to exhaust on August 4, 2022. (ECF No. 27.) On August 12, 2022, the U.S. Marshals Service sent out requests for waiver of service to all Defendants.

## IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549

---

[3] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

9

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners

in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

11

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dept. of Corr.*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

> relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## VI.  Analysis

In their motion for summary judgment, Dr. Stallman and Dr. Lacy focus on the contents of grievances URF 21-07-1838-12D1 and URF-22-04-558-12E4 in arguing that Page failed to exhaust his administrative remedies with respect his claims against them. (ECF No. 27, PageID.131-132.) Page asserts that URF 21-07-1838-12D1 exhausted his claim against Dr. Stallman. (ECF No. 42, PageID.304.) He also provides portions of URF-22-03-380-12E3 against Dr. Stallman and URF-22-06-0953-28E against Dr. Lacy as evidence that he exhausted his claims.

As an initial matter, the undersigned notes that grievances URF-22-04-558-12E4 and URF-22-03-380-12E3 cannot serve to exhaust Page's claims against Dr. Stallman because Page did not appeal them through Step III of the grievance process

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

13

prior to filing suit. *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (explaining that a plaintiff cannot exhaust administrative remedies "during the pendency of the action"). Page filed this lawsuit in February of 2022. (ECF No. 1.) Page's Step III Grievance Report reflects that Page did not submit his Step III appeal to grievance URF-22-04-558-12E4 until June 13, 2022. (ECF No. 27-1, PageID.137.) And the Step II Response to grievance URF-22-03-380-12E3 is dated April 14, 2022. (ECF No. 47-1, PageID.347.)

Similarly, grievance URF-22-06-0953-28E cannot serve to exhaust Page's claim against Dr. Lacy because it was not appealed through Step III of the grievance process prior to Page amending his complaint to add his claim against Dr. Lacy. *See Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) (explaining that a plaintiff complies with the exhaustion requirement when he amends his complaint to add claims exhausted after the initiation of his lawsuit, but prior to amendment). This Court granted Page's motion to amend his complaint on June 29, 2022. (ECF No. 12, PageID.72.) The Step III response to grievance URF-22-06-0953-28E is dated July 26, 2022. (ECF No. 47-1, PageID.346.)

With respect to grievance URF-21-07-1838-12D1, the Defendants contend that Page did not name Dr. Lacy, and that Page merely complained that he had not been scheduled to see Dr. Stallman, not that Dr. Stallman had provided inadequate care. (ECF No. 27, PageID.131-132.) Page argues that grievance URF-21-07-1838-12D1 set forth a claim of deliberate indifference against Dr. Stallman. (ECF No. 42, PageID.304.)

First, the undersigned concludes that the record before the Court shows that that Dr. Lacy is not named or otherwise referenced in grievance URF-21-07-1838-12D1. Thus, Defendants have shown that no genuine issue of fact exists with regard to Page's claim against Dr. Lacy.

Second, the undersigned concludes that Page's complaints in grievance URF-21-07-1838-12D1 and the decisions the MDOC rendered in processing this grievance through Step III are sufficient to create a genuine issue of material fact with respect to the question of whether Page exhausted his claim against Stallman. The undersigned notes, however, that this conclusion is a close call.

Page's Step I form for grievance URF-21-07-1838-12D1 is shown below.

[Grievance form image: Michigan Department of Corrections Prisoner/Parolee Grievance Form. Date Received at Step I: 7/19/21. Grievance Identifier: URF 21 07 1838 12D1. Name: Joshua Page. Number: 866570. Institution: URF. Lock Number: L-104. Date of Incident: 7-19-21. Today's Date: 7-19-21.

"6/13/21 I wrote medical to have a follow up with Dr Stallman, I was told I will see him in may. Then I kited again on 7/12/21 and still have not seen him.

I am not getting proper medical treatment. It is on record I have Restless legs. I have been waiting to see the doctor for a very long time, I am dealing with alot of Pain. I had to wait 8 months just to see the doctor because of the pandemic. Well now they are seeing people again and I need to be seen ASAP. I cannot & should not have to wait almost 2 months to see medical."]

15

(ECF No. 27-1, PageID.148.)

In his Step I grievance, Page complained that he was not receiving adequate treatment for his restless leg syndrome. But as Defendants point out (ECF No. 27, PageID.132), the crux of Page's Step I grievance seems to be that he had not seen Dr. Stallman, not that Dr. Stallman had been deliberately indifferent to his medical needs.

The Step I Grievance Respondent appeared to interpret the grievance in a similar manner, explaining that Page had been evaluated for restless leg syndrome on several occasions, and that he was scheduled for an appointment with Dr. Stallman on July 27, 2021. (ECF No. 27-1, PageID.151.) A portion of the Step I response is shown below.

> **COMPLAINT SUMMARY:**
> Upon review the patients issue is that he has not been seen by the Medical Provider for his restless leg syndrome.
>
> **INVESTIGATION SUMMARY:**
> Investigation reveals and the healthcare documentation reflects that the patient has been evaluated several times for his complaints of leg pain/restless legs. The patient submitted a medical request on July 20, 2021 and the patient was scheduled an appointment with the nurse. The patient was evaluated by the nurse on July 23, 2021. The nurse upon completing the evaluation performed patient teaching and informed the patient to attend his scheduled appointment next week with the Medical Provider. The patient has an appointment on July 27, 2021 with the Medical Provider and is encouraged to attend.

(*Id.*)

Page then filed a Step II appeal, complaining that he had been seen by the doctor only once. (*Id.*, PageID.145.) The Step II Grievance Response to URF-21-07-1838-12D1, which is shown below, went beyond addressing scheduling issues and instead commented on the adequacy of the treatment Page had received.

> **Michigan Department of Corrections**    URF-2021-07-**1838**-12D1
>
> **Grievance Step II Response**    PAGE 866570
>
> Grievant claims that he has been denied timely evaluation by a medical provider re: restless leg syndrome.
>
> Review of the electronic medical record reveals that grievant has an extensive history of restless leg syndrome and has been followed/treated by medical providers re: same. Grievant was examined by a physician on 5/25/2021. Per documentation of that encounter, the provider adjusted grievant's medication regimen and scheduled a provider follow-up appointment to assess grievant's response to the medication changes. The follow-up appointment occurred on 8/3/2021 when the provider again adjusted grievant's medication. Another follow-up appointment was ordered at that time. It is currently scheduled to occur in latter September.
>
> Grievant is assured that every effort is made to schedule patients with the providers in as timely a manner as is possible. As outlined above, grievant has been evaluated by a provider and treated as deemed appropriate. Grievant is encouraged to discuss his symptoms and concerns with the provider at his scheduled visits, to follow the plan of care as instructed, and to promptly notify Health Care if he experiences acute adverse symptoms in future and/or if he has any further concerns re: chronic symptoms or issues.
>
> Grievance denied.
>
> Patricia Lamb, RN, BSN    *Patricia Lamb, RN, BSN*    August 27, 2021
> Respondent Name    Respondent Signature    Date

(*Id.*, PageID.147.)

Here, the Step II Grievance Respondent considered whether Dr. Stallman was providing Page with adequate care.[5] (*Id.*)

---

[5] The undersigned acknowledges that the Step II Grievance Response does not refer to Dr. Stallman by name. However, the dates of the appointments listed in the response are consistent with the dates that Page alleges to have seen Dr. Stallman in his complaint. (ECF No. 7, PageID.42-43.) And in his response to Defendants' motion, Page explains that Stallman is the only physician at URF. (ECF No. 42, PageID.304.)

17

Page then filed a Step III appeal. (*Id.*, PageID.145.) The Step III Grievance Respondent agreed that Page's medical concerns were being "appropriately addressed." (*Id.*, PageID.144.)

Ultimately, the purpose behind the administrative exhaustion requirement is in part to provide the MDOC with notice of a prisoner's claims, and the opportunity to resolve those claims prior to litigation. *Porter*, 534 U.S. at 525. So although grievance URF-21-07-1838-12D1 presents a close call with respect to Page's claim against Dr. Stallman, the undersigned finds that Defendants have not met the Rule 56 standard with respect to Page's claim against Dr. Stallman.

### VII.   Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment with respect to Dr. Lacy and deny Defendants' motion with respect to Dr. Stallman. The record before the Court shows that Page did not appeal any grievances against Dr. Lacy through Step III of the grievance process before amending his complaint to add his claim against Dr. Lacy. Thus, Defendants have shown that no genuine issue of material fact remains with regard to the claim against Dr. Lacy. However, the record reflects that Page filed a grievance in July of 2021 complaining of the delay in his treatment and naming Dr. Stallman as his medical provider. That grievance was appealed and denied on its merits at all three steps of the grievance process prior to Page filing this action, with the Step II and III Respondents specifically finding that Dr. Stallman was providing Page with adequate

medical care. Accordingly, Defendants have not met the Rule 56 standard with respect to Page's claim against Dr. Stallman.

If the Court accepts this recommendation, Dr. Lacy will be dismissed from this case. Page's deliberate indifference claims against all Defendants other than Dr. Lacy will remain.


Dated:   October 4, 2022                                    /s/ *Maarten Vermaat*
                                                            MAARTEN VERMAAT
                                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).