UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA JEFFREY
PAGE, #866570,

     Plaintiff,

v.

RICHARD D. RUSSELL, et al.,

     Defendants.
_____/

Case No. 2:22-cv-30

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses:

- Defendant Peters's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies or, alternatively, motion to dismiss (ECF No. 74),

- Defendants Bennett, Covert, Davis, Duncan, Hense, Lamb, Nader, Russell, Stain, and Stranaly's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies (ECF No. 83), and

- Defendant Ankiel's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies (ECF No. 85).

Plaintiff — state prisoner Joshua Jeffrey Page— filed suit pursuant to 42 U.S.C. § 1983 on February 8, 2022. In his unverified complaint, Page asserted that

while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, nineteen prison officials[1] acted with deliberate indifference to his serious medical needs by denying him medical care for pain associated with restless leg syndrome. (ECF No. 1, PageID.6-8.) On March 10, 2022, this Court ordered Page to file an amended complaint because his February 8, 2022 complaint did not set forth specific factual allegations against Defendants. (ECF No. 6, PageID.31-32.) After Page amended his complaint (ECF No. 7), this Court dismissed Defendants Doyle, Casey, Horton, Corrigan, Batho, and MacLean for Page's failure to state a claim against them in his amended complaint (ECF No. 11, PageID.64-67). At the same time, the Court allowed Page to amend his complaint to sue all remaining Defendants in their personal and official capacities, to request compensatory damages, and to add another Defendant: Dr. Lacy. (*Id.*, PageID.63.)

On August 4, 2022, Defendants Dr. Stallman and Dr. Lacy moved for summary judgment based on Page's failure to exhaust his administrative remedies against them. (ECF No. 27.) On October 4, 2022, the undersigned issued an R&R addressing the motion. (ECF No. 73.) After determining that Page appealed only one grievance, grievance URF-21-07-1838-12D1, through Step III of the grievance process prior to

---

[1] Page initially named the following officials as defendants: (1) Warden Connie Horton, (2) Deputy Warden J. Corrigan, (3) Assistant Deputy Warden Rob Batho, (4) Grievance Coordinator M. McLean, (5) Richard D. Russell, (6) Housing Unit Manager (HUM) Beth Stain, (7) Dr. Unknown Stallman, (8) Registered Nurse (RN) Patricia Lamb, (9) RN Ressie A. Stranaly, (10) RN Gerald Covert, (11) RN Anita Doyle, (12) RN Lori L. Davis, (13) RN Maria T. Bennett, (14) RN Mary Hense, (15) RN Nelson Duncan, (16) K. Nadar, (17) RN Jodi Ankiel, (18) RN Gabraielle Peters, and (19) RN Kathy Casey.

2

filing suit, and that the grievance only pertained to Page's claim against Dr. Stallman, the undersigned recommended that the Court grant summary judgment as to Page's claim against Dr. Lacy but deny summary judgment as to Page's claim against Dr. Stallman. (*Id.*, PageID.488-494.)

Defendants RN Peters, RN Bennett, RN Covert, RN Davis, RN Duncan, RN Hense, RN Lamb, Nader, Russell, HUM Stain, RN Stranaly, and RN Ankiel now move for summary judgment based on Page's failure to exhaust his administrative remedies against them. (ECF Nos. 74, 83, 85.) RN Peters also alternatively moves to dismiss. (ECF No. 74.) Defendants assert either that Page did not file any grievances against them (ECF No. 74, PageID.508-509; ECF No. 84, PageID.553; ECF No. 86, PageID.598-599), or that the grievances against them were not exhausted prior to Page filing suit (ECF No. 84, PageID.554). Peters additionally contends that Page's single allegation against her is insufficient to state a claim for deliberate indifference. (ECF No. 74, PageID.509-510.)

Page responded to each motion for summary judgment, arguing that although grievance URF-21-07-1838-12D1 names only Defendant Stallman, it was sufficient to exhaust his claims against all Defendants. (ECF No. 77, PageID.517-518; ECF No. 90, PageID.606-607; ECF No. 93, PageID.615-616.) Defendants replied, arguing that Michigan Department of Corrections (MDOC) policy requires prisoners to include the name of each individual involved in the issue being grieved in order to exhaust their administrative remedies. (ECF No. 94, PageID.619-621; ECF No. 95, PageID.628-630; ECF No. 96, PageID.649.)

3

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment (ECF Nos. 74, 83, 85). In the opinion of the undersigned, RN Peters, RN Bennett, RN Covert, RN Davis, RN Duncan, RN Hense, RN Lamb, Nader, Russell, HUM Stain, RN Stranaly, and RN Ankiel have shown that they are entitled to summary judgment because Page's grievance <u>URF-21-07-1838-12D1</u> was insufficient to exhaust his claims against them.

## II.  Factual Allegations

Page's factual allegations were thoroughly set forth in the undersigned's R&R filed October 4, 2022. There, the undersigned stated that:

> Page says that he sent health care a kite[2] on August 26, 2020. (ECF No. 7, PageID.40.) In that kite, Page informed health care that his medication was not working and that he could not sleep. RN Hense responded, telling Page that, due to the state of emergency in Michigan, health care was only seeing patients with emergent medical conditions. Hense told Page to use his hot water bottle and wear his compression stockings, and to let health care know if his condition became emergent. (*Id.*)
>
> On August 29, 2020, Page sent health care another kite, this time stating that he did not have a hot water bottle or compression stockings. Page specified that the Tylenol he had been given to treat his leg pain was no longer helping and requested something else to manage his pain. (*Id.*) RN Hense responded the next day, telling Page that health care would schedule an appointment to measure him for compression socks. Hense did not address Page's request for different pain medication. And Page says that he was not given compression socks. (*Id.*)
>
> On January 9, 2021, Page again sent health care a kite stating that his restless leg medication was not working, and he was in pain. (*Id.*, PageID.40-41.) This time, RN Stranaly responded, reiterating that health care could not see Page due to the ongoing state of emergency.

---

[2]  Kites are the written communications prisoners use to raise their concerns with prison staff, including health care workers.

4

(*Id.*, PageID.41.) Stranaly told Page to take his medication and continue to use compression socks and warm compresses.

On January 29, 2021, Page authored grievance <u>URF-21-02-334-25E</u>, complaining that he had repeatedly kited health care about his restless leg syndrome over the last seven months, and had not received any treatment. (*Id.*) Page says that this grievance was rejected as untimely.

On March 12, 2021, Page was seen by RN Duncan. (*Id.*) Duncan allegedly accused Page of being drug seeking and told Page that he would not be seen by a doctor. On the same day, Page wrote grievance <u>URF-21-03-732-12E</u>, complaining about RN Duncan's conduct during their interaction. (*Id.*) Page says the grievance was denied, and he did not appeal it to Step II of the process.

On May 1, 2021, Page says that he sent another kite to health care requesting to be seen by a doctor for his restless leg syndrome. (*Id.*) RN Stranaly responded and told Page that he had an appointment for May 19, 2021. (*Id.*, PageID.41-42.) Page was not seen that day. (*Id.*, PageID.42.) He sent a kite to health care on May 21, 2021 inquiring as to his appointment. Stranaly again responded, stating that Page had an appointment for May 25, 2021. (*Id.*)

On May 25, 2021, Page was seen by Dr. Stallman. On June 11, Page sent health care a kite explaining that the magnesium oxide that Dr. Stallman prescribed Page was causing him major headaches. (*Id.*) Page says that RN Bennett responded, telling Page that he had an appointment with Dr. Stallman in July.

On July 8, 2021, Page again sent a kite to health care complaining about severe pain in his legs. (*Id.*) RN Davis responded, telling Page that he had an appointment scheduled for later in the month. Page says that he authored grievance <u>URF-21-07-1838-12DI</u> on July 19, 2021, complaining that he was not receiving proper treatment for his restless leg syndrome. (*Id.*) Page explained that he had been waiting to see a doctor for a long time, and that he could not endure the pain any longer. Page appealed the grievance through Step III. (*Id.*, PageID.42-44.) It was denied at all steps of the grievance process after the respondents determined that Page was receiving adequate care. (*Id.*)

On August 2, 2021, Page says that he sent another kite to health care complaining about the pain in his legs. (*Id.*, PageID.43.) Stranaly responded, telling Page that he was scheduled for an appointment with

5

a medical provider. The next day, Dr. Stallman told Page that Page was going to see pain management the next time they came by URF. (*Id.*)

On September 3, 2021, Page sent another kite to health care regarding his leg pain. (*Id.*) Duncan responded, telling Page that he had an upcoming appointment with his medical provider. (*Id.*, PageID.44.) This pattern then repeated several times over, with Page sending kites to health care about his leg pain on October 5, 2021, November 9, 2021, and February 7, 2022, and RN Bennett and RN Ankiel telling Page he had been scheduled for appointments with his medical provider. (*Id.*, PageID.44-45.)

On February 15, 2022, Page again sent health care a kite regarding his leg pain. (*Id.*, PageID.45.) This time, Page claims that Duncan responded and told Page he must see a nurse before he could see his medical provider. On February 28, 2022, Page sent health care another kite regarding his legs and Peters responded, telling Page to send another kite if he wanted to be evaluated by nursing staff. (*Id.*) On March 2, 2022, Page responded, explaining that the pain in his legs was an ongoing issue and he should not need to be evaluated by nursing. (*Id.*, PageID.45-46.) Nevertheless, Duncan evaluated Page for chronic pain the next day and allegedly told Page that the best Duncan could do was provide Page with Cedaprin (pain reliever) and tell Page to stretch his legs. (*Id.*, PageID.46.) Page told Duncan that neither Cedaprin nor stretching were working, and Duncan told Page that he would not receive further treatment.

On March 8, 2022, Page sent another kite to health care asking to be seen by a doctor. (*Id.*) Page says that he is in the process of appealing yet another grievance against health care staff. (*Id.*) Page says that he never received any treatment from Dr. Lacy, the pain management provider. (ECF No. 7-1, PageID.169.)

(ECF No. 73, PageID.478-482.)

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

[3]  If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where

8

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal

9

resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding

10

non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dept. of Corr.*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOC PD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected

11

to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## V.  Analysis

In their motions for summary judgment, Defendants identify URF 21-07-1838-12D1 as the only grievance that Page pursued through Step III of the grievance process prior to filing suit. Defendants assert that this grievance did not set forth Page's claims against them. (ECF No. 74, PageID.508-509; ECF No. 84, PageID.553; ECF No. 86, PageID.598-599.)

This Court has already recognized that URF 21-07-1838-12D1 was the only relevant grievance that Page exhausted prior to filing this lawsuit. (ECF No. 73, PageID.488-489 (October 4 R&R); ECF No. 92 (Order Approving and Adopting R&R).) And a plaintiff cannot exhaust administrative remedies "during the pendency of the action." *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002). As such, URF 21-07-1838-12D1 is the only grievance through which Page could have exhausted his claims against Defendants.

Step I of grievance URF 21-07-1838-12D1 is shown below.

---

[4]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I: 7/19/21    Grievance Identifier: URF 21 07 11 83 8 12 D11
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> Name (print first, last): Joshua Page    Number: 866570    Institution: URF    Lock Number: L-104    Date of Incident: 7-19-21    Today's Date: 7-19-21
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. 6/13/21 I wrote medical to have a follow up with Dr Stallman, I was told I will see him in may. Then I kited again on 7/12/21 and still have not seen him.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> I am not getting proper medical treatment. It is on record I have Restless legs. I have been waiting to see the doctor for a very long time. I am dealing with alot of pain. I had to wait 8 months just to see the doctor because of the pandemic. Well now they are seeing people again and I need to be seen ASAP. I cannot & should not have to wait almost 2 months to see medical.
>
> Grievant's Signature: [signed]
>
> RESPONSE (Grievant Interviewed?) ☐ Yes ☒ No    If No, give explanation. If resolved, explain resolution.)

(ECF No. 27-1, PageID.148.)

In his Step I grievance, Page complained that he was not receiving adequate treatment for his restless leg syndrome. The only Defendant that Page named was Dr. Stallman. But Page contends that there was enough information in the grievance to put Defendants on notice of his claims, and that the grievance was therefore sufficient to exhaust his claims. (ECF No. 77, PageID.517 (citing *Patterson v. Stanley*, 547 Fed. App'x 510 (5th Cir. 2013)); ECF No. 90, PageID.606 (same); ECF No. 93, PageID.615 (same).)

As an initial matter, the undersigned acknowledges that nothing in the PLRA requires prisoners to name all defendants during the grievance process. *Jones*, 549

13

U.S. at 217. But the PRLA does require proper exhaustion, meaning that prisoners must exhaust their claims in accordance with prison's grievance procedures. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). MDOC P.D. 03.02.130 ¶ S requires prisoners to include in their grievance the "[d]ates, times, places and names of all those involved in the issue being grieved." Because Page only named Dr. Stallman, URF 21-07-1838-12D1 cannot serve to exhaust his claims against RN Peters, RN Bennett, RN Covert, RN Davis, RN Duncan, RN Hense, RN Lamb, Nader, Russell, HUM Stain, RN Stranaly, or RN Ankiel.[5] *See Robinson v. Gidley*, No. 1:07-CV-668, 2008 WL 623822 (W.D. Mich. Mar. 3, 2008) (granting summary judgment in favor of defendants who were not named in the plaintiff's grievances). As such, this Court should dismiss Page's claims against them.[6]

## VI. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment (ECF Nos. 74, 83, 85). In the opinion of the undersigned, there are no genuine issues of material fact regarding exhaustion because Page's grievance URF-21-07-1838-12D1 was insufficient to exhaust his

---

[5] The undersigned further notes that grievance URF 21-07-1838-12D1 was filed on July 19, 2021. Many of Page's allegations relate to incidents occurring after July 19, 2021. (ECF No. 7, PageID.42-47.) All of Page's allegations against Defendants Lamb, Nader, Russell, Ankiel, and Peters relate to incidents occurring after July 19, 2021. (*Id.*) It is therefore clear that even absent the MDOC's requirement that prisoners name all involved parties in their grievances, URF 21-07-1838-12D1 could not have put all Defendants on notice of Page's claims.

[6] Because Page failed to exhaust his administrative remedies, the Court need not address Peters's alternative argument that Page failed to state a claim against her.

claims against RN Peters, RN Bennett, RN Covert, RN Davis, RN Duncan, RN Hense, RN Lamb, Nader, Russell, HUM Stain, RN Stranaly, and RN Ankiel.

If the Court accepts this recommendation, only Page's claim against Dr. Stallman will remain; all other Defendants will be dismissed from this case.

Dated: November 28, 2022          /s/ *Maarten Vermaat*
                                   MAARTEN VERMAAT
                                   U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).